IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TYEE KYVELOS,

        Plaintiff,                                Civil No. 06-6248-PK

        v.                                       FINDINGS AND
                                                         RECOMMENDATION

MICHAEL J. ASTRUE,

        Defendant.

_____

PAPAK, Magistrate Judge:

      Plaintiff Tyee Kyvelos ("Kyvelos") seeks judicial review of the Social Security Commissioner's final decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons that follow, the Commissioner's decision should be affirmed.

1 - FINDINGS AND RECOMMENDATION

## BACKGROUND

Born in 1983, Kyvelos has a ninth or tenth grade education and no significant work history. Tr. 55, 64.[1] Kyvelos filed an SSI application on July 21, 2003, alleging disability due to head injuries and mental problems. Tr. 56, 58. The Social Security Agency denied his application initially and upon reconsideration. Tr. 39-41, 43-46. After a December 2005 hearing before an Administrative Law Judge ("ALJ"), the ALJ found Kyvelos not disabled. Tr. 12-25. The Appeals Council denied review of the ALJ's decision. Tr. 4-6. This action made the ALJ's decision the Commissioner's final decision, from which Kyvelos filed this appeal.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 416.920, *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Kyvelos challenges the ALJ's evaluation of the evidence and his conclusions at step five.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.* At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations.

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer March 14, 2007 (Docket #10).

20 C.F.R. § 416.920(a)(4)(iii). If the ALJ determines the impairment meets or equals a listed impairment, the claimant is disabled. 20 C.F.R. § 416.920(d).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. § 416.920(e), Social Security Ruling ("SSR") 96-8p. The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. § 416.920(a)(4)(iv). If the ALJ finds the claimant can do his past relevant work, he is not disabled. 20 C.F.R. § 416.920(f).

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999), 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 416.966, 416.920(g).

## **THE ALJ'S FINDINGS**

At step one in the sequential proceedings, the ALJ found that Kyvelos had not engaged in substantial gainful activity. Tr. 24. The ALJ found that Kyvelos had the following "severe"

3 - FINDINGS AND RECOMMENDATION

impairments at step two: "borderline intellectual functioning, a panic disorder, borderline personality disorder, depression, a question of schizotypal and obsessive disorders, and ongoing marijuana abuse." *Id.* At step three, the ALJ found that the medically determinable impairments did not meet or equal a listed impairment. *Id.* The ALJ subsequently found Kyvelos's allegations regarding his limitations "not totally credible" and evaluated Kyvelos's RFC as follows:

> he is unable to understand, remember, and carry out detailed instructions, and is unable to work with the public or to work intensively with others or as part of a team; he is intolerant of changes in a work setting and unable to establish his own goals and plans. He is able to perform a limited range of unskilled work at all exertional levels.

*Id.* The ALJ found that Kyvelos has no past relevant work at step four, and that he could perform significant work in the national economy at step five. *Id.* The ALJ therefore found Kyvelos not disabled. *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 503, 512 (9th 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a

rational reading. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Kyvelos contends that the ALJ improperly evaluated and rejected the opinions of a treating physician and an evaluating psychologist, and improperly assessed his own credibility and that of his mother. Kyvelos consequently asserts that the ALJ inaccurately assessed his RFC and made an erroneous conclusion at step five.

### I.    Medical Source Statements

#### A.    Standards

A treating physician's opinion is generally accorded greater weight than an examining physician's opinion. *Edlund*, 253 F.3d at 1157. The ALJ must give specific, legitimate reasons supported by substantial evidence in the record for rejecting a controverted opinion from a treating physician and "clear and convincing reasons" for rejecting an uncontroverted opinion of an examining physician. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). If an examining physician's opinion is contradicted, the ALJ need only provide "specific and legitimate" reasons. *Id.* The opinion of the treating physician, however, is not necessarily conclusive on the ultimate issue of disability, which is reserved for the Commissioner to decide. 20 C.F.R. § 416.927(c)(1).

#### B.    Treating Physician Dr. Goldenberg

Kyvelos asserts that the ALJ erroneously rejected treating pediatrician Dr. Goldenberg's December 10, 2003, note that Kyvelos is "presently unable to work due to mental health." Pl. Opening Br. 16.

5 - FINDINGS AND RECOMMENDATION

The ALJ noted that Dr. Goldenberg's medical records produced between 1994 and June 2005 "document routine and transitory medical care over the years, and show the claimant to basically be physically healthy and active, without indication of any chronic physical medical problems or mental health issues." Tr. 14.  The ALJ subsequently discussed Dr. Goldenberg's clinical notes in detail.  The ALJ cited a head injury Kyvelos experienced in 1998 and Dr. Goldenberg's reiteration of Kyvelos' mother's reports of Kyvelos' anxiety, depression, and alleged hallucinations. *Id.*

Kyvelos does not challenge the ALJ's assessment of Dr. Goldenberg's medical notes.  Pl. Opening Br. 16-17.  The record reflects a full and proper analysis by the ALJ.  Tr. 150-169.  Kyvelos contends, however, that the ALJ inappropriately rejected a note written by Dr. Goldenberg in December 2003 and submits that the note, indicating that Kyvelos was unable to work, should be credited as a matter of law.

On December 10, 2003 Dr. Goldenberg's wrote a note which stated, "this patient is presently unable to work due to mental health.  He is being treated." Tr. 152.  Dr. Goldenberg provided no support for this restriction.  The ALJ made the following findings regarding this opinion:

> This statement has been considered under Social Security Ruling 96-2p, but has no meaningful probative value . . . Dr. Goldenberg wrote this note apparently trying to be helpful while referring the claimant for mental health treatment which he wrongly assumed would be pursued.  Further, he rendered a vocational (non medical) conclusion that the claimant was "unable to work," which is an issue reserved for the Commissioner under Social Security Ruling 96-5p, without providing any diagnoses, rationale, duration, or articulated functional restrictions.  Additionally, Dr. Goldenberg is

>a primary care physician with no known expertise in mental health issues.

Tr. 21.

The ALJ's finding that Dr. Goldenberg's medical notes did not provide diagnoses or rationale for his work restriction is based upon the record. The ALJ may reject physician opinions that are "brief, conclusory and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216. The ALJ also correctly noted that findings of disability are reserved for the Commissioner. 20 C.F.R. § 416.927(c)(1).

The ALJ erred in asserting that Dr. Goldenberg's opinion should be rejected because he was not a mental health specialist. Primary care physicians may make mental health assessments in disability proceedings. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). However, in light of the ALJ's other findings regarding Dr. Goldenberg, this error does not warrant reversal. Except as noted, the ALJ appropriately assessed Dr. Goldenberg's medical and vocational opinions.

### C. Examining Psychologist Dr. Prescott

Kyvelos also asserts that the ALJ erroneously rejected three opinions submitted by examining psychologist Dr. Prescott. Pl. Opening Br. 14-16. The ALJ discussed Dr. Prescott's opinions in detail. Tr. 15-21. The ALJ accepted Dr. Prescott's diagnoses of panic disorder, borderline personality disorder, and borderline intellectual functioning. Tr. 16. The ALJ also accepted her subsequent diagnosis of schizotypal and obsessive personality disorders (Tr. 17), but rejected Dr. Prescott's conclusions regarding the severity of Kyvelos' symptoms. Tr. 19-20. The ALJ noted that Dr. Prescott was an examining, not a treating psychologist, and that her severity findings are predicated upon Kyvelos' self reports. *Id.*

7 - FINDINGS AND RECOMMENDATION

Kyvelos first contends that "no other doctor" contradicted Dr. Prescott's conclusions. Pl. Opening Br. 14. He then infers that, because Dr. Prescott's opinion is not contradicted, it should be entitled to controlling weight.

This submission is not based upon the record. Dr. Goldenberg treated Kyvelos throughout the period in question and made no findings of borderline intellectual functioning, borderline personality disorder, or schizotypal and obsessive personality disorders. Thus, the ALJ was only required to provide "specific and legitimate" reasons for rejecting Dr. Prescott's opinion. *Bayliss*, 427 F.3d at 1216.

Kyvelos contends that Dr. Prescott "based her opinion on a combination of factors: her interview with Kyvelos, the test scores, and his self-report." Pl. Opening Br. 14. Kyvelos apparently would assert that these factors substantiate Dr. Prescott's findings.

The ALJ may reject a medical opinion predicated upon reports of a claimant found not credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2002). The ALJ's finding, discussed below, appropriately found Kyvelos not credible. The ALJ may also consider a claimant's self limiting in testing in addressing the validity of the test results. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ noted that Kyvelos did not complete clinical testing. Tr. 20. For these reasons, the ALJ's citation to Kyvelos' credibility and conduct in assessing Dr. Prescott's clinical justification for her opinions should is appropriate.

The ALJ discussed Kyvelos' marijuana use at length throughout his decision, specifically stating that Dr. Prescott "agreed with Dr. Goldenberg that Mr. Kyvelos' marijuana use can interfere with the effects of his psychotropic medications, as well as that his marijuana use may

8 - FINDINGS AND RECOMMENDATION

worsen his symptoms." Tr. 19. Kyvelos contends[2] that Dr. Prescott believed Kyvelos' "long standing schizotypal personality disorder . . . predated his marijuana usage." Pl. Opening Br. 18. Kyvelos claims this assertion deserves controlling weight because it is not contradicted.

As discussed above, the ALJ's findings show that Dr. Prescott's opinion is not "uncontradicted." Dr. Goldenberg's longitudinal treatment of Kyvelos showed no personality disorder diagnoses, and Dr. Goldenberg also stated that Kyvelos' marijuana use exacerbated his symptoms. Tr. 156, 190. Furthermore, Dr. Prescott testified at Kyvelos' hearing that she had "no disagreement" with Dr. Goldenberg's assessment that Kyvelos' marijuana use contributes to his symptoms. Tr. 220. The ALJ's finding that Dr. Prescott agreed with Dr. Goldenberg that Kyvelos' marijuana use could impact his symptoms is properly based upon the record.

Kyvelos finally contends that the ALJ inappropriately found that Dr. Prescott acted as an "advocate" for Kyvelos. Pl. Opening Br. 15. Kyvelos does not develop this argument and, thus, it will not be addressed.

In summary, the ALJ provided sufficient rationale for rejecting the opinions of examining psychologist Dr. Prescott in favor of treating physician Dr. Goldenberg. The ALJ's evaluation of Drs. Goldenberg and Prescott should be affirmed.

## II.     Kyvelos' Credibility

The ALJ found Kyvelos' allegations regarding his limitations "not totally credible." Tr. 24. The ALJ repeatedly cited Kyvelos' noncompliance with medication, failure to obtain recommended mental health treatment, and inconsistent testimony regarding his daily activities.

---

[2]Kyvelos raises this argument in his credibility challenge. Because this submission challenges the ALJ's reading of Dr. Prescott's opinion, rather than Kyvelos' credibility, this court addresses it in the context of Dr. Prescott's medical source statements.

Tr. 14-21.

### A.    Legal Standard

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* Once a claimant shows an underlying impairment, the ALJ may not, however, make a negative credibility finding "solely because " the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d 880, 883 (9th Cir. 2006).

### B.    Discussion

The ALJ noted that Kyvelos ceased taking prescribed antidepressants and continued using marijuana against treating physician Dr. Goldenberg's advice. Tr. 14, 15. The ALJ also noted that Kyvelos repeatedly failed to follow through in seeking mental health treatment despite repeated directions to do so from Dr. Goldenberg. Tr. 15. These findings are based upon the record. Tr. 151, 154, 191. The ALJ's credibility finding may cite a claimant's inadequately

explained non-compliance with treatment recommendations or failure to seek treatment.  *Smolen*, 80 F.3d at 1284.

The ALJ also discussed Kyvelos' reported activities of daily living.  The ALJ specifically noted that Kyvelos reported completing household chores, reading, playing video games, visiting with friends, and going to the mall.  Tr. 15, 21.  The ALJ may cite such discrepancies or inconsistencies between a claimant's asserted limitations and his daily activities.  *Lingenfelter*, 504 F.3d at 1040, *Smolen*, 80 F.3d at 1284.

In summary, this court finds that the ALJ provided clear and convincing reasons for finding Kyvelos not credible.  The ALJ's findings are based upon the record and the proper legal standards.  These findings show that Kyvelos failed to follow treatment recommendations, failed to curtail his drug use (which both Dr. Goldenberg and Dr. Prescott believed worsened his alleged symptoms), and offered contradictory testimony regarding his activities of daily living.

## III.    Lay Witness Testimony

Kyvelos claims the ALJ improperly rejected testimony submitted by his mother, Helen Kyvelos, and an unspecified teacher.  Pl. Opening Br. 19.  The ALJ found Helen Kyvelos not credible.  Tr. 18.  The ALJ did not discuss the teacher's submission.

### A.    Analysis: Lay Witness Testimony

The ALJ has a duty to consider lay witness testimony.  20 C.F.R. §§ 416.913(d), 416.945(a)(3), *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  This duty obligates the ALJ to "consider lay witness testimony concerning a claimant's ability to work."  *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2007).  Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's

11 - FINDINGS AND RECOMMENDATION

condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The value of lay witness testimony lies in their eyewitness observations, which may "often tell whether someone is suffering or merely malingering." *Id.* at 919. The ALJ may not reject such testimony without comment, but he may reject lay testimony inconsistent with medical evidence. *Lewis*, 236 F.3d at 511. If an ALJ rejects lay witness testimony entirely, he must give reasons germane to the witness. *Id.*

### B. Discussion

#### a. Helen Kyvelos

The ALJ cited Ms. Kyvelos' testimony that she sees her son once per month, and that Kyvelos has reported hallucinations since age three. Tr. 16. The ALJ also cited her testimony that Kyvelos smokes "a lot of pot," "can't deal with society," threatened to kill her, washes his hands "constantly," and stole from his friends. *Id.* The ALJ found this testimony not credible. Tr. 18. The ALJ supported this finding by noting the time of Ms. Kyvelos' reports and finding Ms. Kevelos' testimony unsupported by the medical record. *Id.*

The ALJ noted that Ms. Kyvelos did not report her son's hallucinations at any period in the record until the time he applied for benefits, but "adds now" that Kyvelos experienced hallucinations since age three. Tr. 14. The ALJ inferred that this timing suggested an opportunistic motive for reporting her sons alleged psychotic symptoms. The ALJ's assessment of Ms. Kyvelos' testimony is based upon the record.   While this court does not chastise disability applicants for secondary gain, *Ratto v. Secretary of Health and Human Services*, 839 F. Supp. 1415, 1428 (D. Or. 1993), this court agrees that the timing of Ms. Kyvelos' testimony was suspect.

The ALJ may also find lay witnesses not credible if their testimony is inconsistent with the medical record. *Lewis*, 236 F.3d at 511. The ALJ correctly noted that the medical record does not establish that Kyvelos experienced hallucinations or psychosis his entire life. Tr. 18. Furthermore, Ms. Kyvelos' testimony does not establish work-related limitations. For this reason, any additional failure by the ALJ to provide a germane reason for rejecting Ms. Kyvelos' testimony is harmless. *Stout*, 454 F.3d at 1055-56. In summary, the ALJ's rejection of Ms. Kevelos' testimony is appropriate.

### b.    Kyvelos' Teacher

Kyvelos contends that the ALJ did not address evidence submitted by one of his teachers.[3] Pl. Opening Br. 19. The ALJ twice cited a form submitted by the teacher on September 26, 2003. Tr. 22.

The ALJ cited the teacher's comments regarding Kyvelos' attendance and concentration difficulties and concluded that Kyvelos "is reasonably precluded from performing detailed or complex tasks, but not unskilled tasks." Tr. 22. This conclusion is consistent with the teacher's observations and shows that the ALJ accepted the teacher's testimony. Kyvelos does not challenge the any other specific findings by the ALJ regarding this teacher's testimony. Kyvelos' submission that the ALJ did not cite or address the teacher's testimony is not based upon the record and therefore fails.

## IV.    The ALJ's Step Five Findings

Kyvelos finally contends the Commissioner failed to meet his burden of establishing that

---

[3]The signature on the submission is illegible.

Kyvelos may perform work in the national economy at step five. Kyvelos has failed to show error in the ALJ's RFC assessment for the above reasons. The ALJ appropriately reviewed the medical evidence, Kyvelos' testimony, and the testimony of lay witnesses. The ALJ's RFC is based upon Kyvelos' adequately supported limitations. The ALJ's solicitation of the vocational expert's testimony and his subsequent findings are based upon substantial evidence and should be sustained.

## RECOMMENDATION

The Commissioner's decision that Kyvelos is not entitled to benefits under Title XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision should be AFFIRMED and a judgment should be prepared dismissing the case with prejudice.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due January 4, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are

filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

Dated this 21st day of December, 2007.

    /s/ Paul Papak
Paul Papak
United States Magistrate Judge

15 - FINDINGS AND RECOMMENDATION